J-S41011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 507 MDA 2019 |

Appeal from the Order Entered February 13, 2019
In the Court of Common Pleas of Mifflin County Orphans' Court at
No(s):  2018-00017, CP-44-DP-0000024-2016

BEFORE:   LAZARUS, J., MURRAY, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:          **FILED: AUGUST 23, 2019**

J.K. (Mother) appeals from the trial court's order involuntarily terminating her parental rights to her minor daughter, A.H. (Child) (born 9/06).[1]  After careful review, we affirm.

In September 2016, Mifflin County Children and Youth Social Services (CYS) received a referral[2] regarding a concern that Child had been left alone in the care of Mother's paramour, A.S., a registered sex offender.[3]  A.S. was

---

[1] Child's biological father's parental rights were terminated on January 17, 2019.  He is not a party to this appeal.

[2] A CYS caseworker testified that the agency had a history with Mother's family due to report of allegedly unsafe and unstable housing conditions, financial instability, Mother's inability to demonstrate proper parenting skills, and Mother's mental health concerns.  N.T. Termination Hearing, 1/4/19, at 18.

[3] A.S. was convicted of his prior sexual offense, sexual abuse of children (possession of child pornography), 18 Pa.C.S. § 6312(d), under this

---

\* Retired Senior Judge assigned to the Superior Court.

living with Mother and her family, including Child and Child's minor half-brother at the time. Child was interviewed in September 2016 at the Children's Advocacy Center (CAC) where she disclosed that she had been the victim of ongoing sexual abuse by A.S.[4] Several of the sexual incidents occurred while Mother was at work; on some occasions, Child's half-brother was at home when the assaults occurred. Mother told a CYS caseworker that she was aware that A.S. was a sexual offender, but that she believed A.S. had been wrongfully convicted. Mother also told a CYS employee that she had no concerns regarding A.S. being around Child.[5] CYS ultimately deemed the reports of A.S.'s sexual abuse of Child "founded."

Child was declared dependent on September 26, 2016, and placed in CYS' legal care and custody. CYS formulated six child permanency plans for

_____

Commonwealth's Megan's Law III, which was signed into law on November 24, 2004, and which provided for registration of sexual offenders. That statute was later struck down and replaced by Pennsylvania's Sex Offender Registration and Notification Act (SORNA). SORNA classifies offenders and their offenses into three tiers. *See* 42 Pa.C.S. §9799.14. Those individuals convicted of Tier III offenses, like A.S., are subject to lifetime registration and are required to verify their registration information and be photographed, in person at an approved registration site, quarterly. 42 Pa.C.S. §9799.15(a)(3), (e)(3).

[4] Child disclosed to a CAC interviewer that A.S. touched the outside and inside of her private areas, masturbated in front of her, and made her touch his penis. CYS Application for Emergency Protective Custody, Allegations of Emergency, 9/26/16, at ¶ 7.

[5] Mother testified at her criminal trial that she believed Child was lying with regard to her sexual abuse allegations against A.S. *See* N.T. (Excerpt of) Jury Trial, 3/19/18, at 133. The testimony from her criminal trial was accepted into evidence at the termination proceedings.

Mother in order for her to work towards reunification with Child. Mother's objectives included: demonstrate appropriate protective capabilities; identify and maintain safe and stable housing; maintain stable income; ensure mental health needs are met through counseling and medication management; demonstrate parenting skills that meet Child's physical, developmental and emotional needs; demonstrate healthy life skills; and cooperate with agency and service providers. Mother was referred to a family intervention crisis center that could provide her parent education, counseling sessions and "lifestyle checks."

In October 2016, Mother was charged with one count of endangering the welfare of children (EWOC) in connection with the sexual assault allegations involving Child and A.S. Mother's last contact with Child was on October 6, 2016, when she had a one-hour, supervised visit with Child. Following Mother's arrest, the court imposed bail, which included a no-contact condition regarding Child. Mother lodged bail and was released from jail in November 2016. The trial court held permanency hearings from March 2017 through June 2018, finding Mother had made minimal or no compliance with plan objectives and had made no progress towards alleviating the circumstances necessitating Child's original placement.

On March 19, 2018, Mother was found guilty by a jury of EWOC and was sentenced on May 11, 2018, to 1-2 years' imprisonment, plus costs and a

$250.00 fine.[6]  At her criminal trial, Mother testified that Child was lying about A.S. having sexually assaulted Child.[7]  Mother was incarcerated from May 11, 2018 to June 1, 2018, at which time she was transferred to SCI-Muncy where she was incarcerated at the time of the current termination hearings.[8]

On September 28, 2018, CYS filed a petition to involuntarily terminate Mother's parental rights, pursuant to 23 Pa.C.S. §§ 2511(a)(1)-(2), (5), and (8) of the Adoption Act.[9]  On January 4 and 9, 2019,[10] the court held

_____

[6] Mother is not eligible for parole until October 2019; however, she testified at the termination hearing that her expected release date is May 2, 2020.

[7] In a separate trial, A.S. was convicted of one count of aggravated indecent assault, three counts of unlawful contact with a minor, one count of corruption of minors, and three counts of indecent assault – all charges involving Child as the victim where she was repeatedly sexually assaulted from June 2016-September 2016.  A.G. was sentenced on December 15, 2017, to an aggregate term of 25-50 years' imprisonment.

[8] Our Court recently affirmed Mother's judgment of sentence on direct appeal. **See Commonwealth v. J.K.**, No. 1170 MDA 2018 (Pa. Super. 2019 filed June 21, 2019) (unpublished memorandum).

[9] 23 Pa.C.S. §§ 2101-2938.

[10] Child was represented by both a guardian *ad litem*, Stuart A. Cilo, Esquire, and an attorney, Brian R. Baker, Esquire, at the January 4th termination proceeding. **See** 23 Pa.C.S. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings) and **In re K.R.**, 2018 PA Super 334 (Pa. Super. filed Dec. 10, 2018) (en banc), **but see In Re: T.S., E.S.**, 2018 Pa. LEXIS 4374, 2018 WL 4001825, at *10 (Pa. filed Aug. 22, 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").  Attorney Baker testified that Child would like Mother's rights terminated and that she eventually be adopted by her foster parents.  N.T. Termination Proceedings, 1/4/19, at 53.

termination hearings at which a CPS intake caseworker, CYS assistant administrator, CYS placement caseworker, and Mother testified. At the hearings, the court admitted two exhibits, offered by CYS, which included two permanency review orders in Mother's dependency case. The court also took judicial notice of the dependency proceedings[11] regarding Child, over which the same trial judge presided. On February 13, 2019, the court granted CYS' petition pursuant to sections 2511(a)(1)-(2), (5) and (8), and further found that terminating Mother's parental rights would best serve Child's developmental, emotional, and physical needs.

Mother filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, Mother presents the following issue for our review:

> Did the trial court commit reversible error in that despite sufficient evidence on the record to support the involuntary termination of Mother's parental rights, Mother's court-ordered lack of all contact with her child provided a reasonable and legally sufficient explanation for her failure to fully perform parental duties and to remedy the causes of the child's placement, so that the totality of the circumstances required the trial court to refuse to terminate Mother's parental rights?

Appellant's Brief, at 3.

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without

---

[11] CP-44-DP-24-2016.

hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (quotation omitted); *see also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).

Moreover, we review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.*

Mother contends that a bail condition, which was also listed on her permanency review orders, prevented her from having any contact with Child and, thus, precluded her from achieving her plan goals. Mother also claims that because CYS did not facilitate any contact between her and Child, it contributed to weakening her parent-child bond with Child and negatively impacted the court's best interest analysis under section 2511(b).

After carefully considering the parties' briefs, the relevant case law, and the certified record on appeal (including exhibits and the incorporated dependency record), we conclude that the trial court properly granted CYS' petition to involuntarily terminate Mother's parental rights to Child under

sections 2511(a)(2)[12] and (b) of the Adoption Act. Accordingly, we rely upon the opinion authored by the Honorable Aaron L. Gingrich to affirm the order terminating Mother's parental rights.

Undeniably, Mother's failure to perform her parental duties, a factor relevant to terminating parental rights under section 2511(a)(1), was impacted to an extent by circumstances beyond her control – a "no contact" bail condition. However, despite this condition, we find that the court properly terminated Mother's rights under section 2511(a)(2), which focuses on a parent's **repeated** neglect or refusal to provide a child with essential care, control or subsistence necessary for his or her physical or mental well-being and where the cause of Mother's neglect will not be remedied by her.[13] ***See In re J.E.***, 745 A.2d 1250, 1255 (Pa. Super. 2000) (Court "need only concur with [the trial court's decision as to] any one subsection [of section 2511(a), in addition to section 2511(b),] in order to affirm the termination of the parties' parental rights."). The grounds for termination of parental rights

_____

[12] Pursuant to section 2511(a)(2), parental rights may be terminated where:

> [t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

[13] In fact, a March 2019 court summary in the dependency action indicates that CYS has received referrals that Mother continues to be in a relationship with A.S.

under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Mother did not address the "no contact" obstacle with the necessary "reasonable firmness" that is required in termination cases; rather, she consistently failed to work toward achieving her parenting plan objectives. Mother chose to temporarily move to Tennessee with A.S., Child's alleged sexual abuser, rather than work on her parenting goals following Child's dependency determination in September 2016. Additionally, Mother was uncooperative with CYS caseworkers, failed to take advantage of the services offered to her, was unable to identify and maintain safe and stable housing, did not apprise CYS of her whereabouts and living location(s), did not verify stable employment, and failed to show that her mental health needs were being met through either counseling or medication management.

While Mother claims that the "state-imposed no contact" bail condition made it impossible to achieve her goals or maintain her bond with Child, we note that when Mother's bail conditions were lifted she made no attempt to "engage in indirect conversations with [Child or] send [C]hild gifts or cards." Trial Court Opinion, 2/13/19, at 7. Mother concedes she did not send Child any gifts, cards or letters while she was on bail or while she has been in prison, claiming that she believed the no-contact bail condition also applied to indirect contact with Child. However, Mother never reached out to CYS to find out if

- 8 -

she was permitted to have indirect contact with Child when bail conditions were lifted.[14] *See In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012) (reiterating incarcerated parent's "duty to utilize available resources to continue a relationship with his or her child" and the fact that "incarceration is a factor, and indeed can be a determinative factor, in a courts conclusion that grounds for termination exist under § 2511(a)(2).").

With regard to termination under section 2511(b), Mother testified that prior to the allegations surrounding the assaultive behavior of A.S., she and Child had a strong parent-child bond, having cared for Child for the first 10 years of her life. While this may have been true, a CYS placement caseworker testified at the termination hearing that Child did not want to see Mother or come to the hearing. N.T. Termination Hearing, 1/4/19, at 43. Moreover, at the termination hearing, CYS caseworkers testified that Child is thriving in foster care, where her developmental, physical and emotional needs are being met and where foster parents and Child have developed a "very strong bond." N.T. Termination Hearing, 1/4/19, at 41. Child considers her foster family, an adoptive resource, as her "real" family and wants to be adopted by them. Child's guardian *ad litem* and CYS caseworker believe that termination is in Child's best interests in order to provide much needed permanency and stability. Accordingly, termination was also proper under section 2511(b).

---

[14] Mother's "Order of Adjudication and Disposition" states that "Mother shall have no contact with Child. **If/when bail conditions are lifted, visits with Mother will be supervised**." Order of Adjudication and Disposition -- Child Dependent, 11/3/16, at 1.

We instruct the parties to attach a copy of the redacted version of Judge Gingrich's February 1, 2019 decision in the event of further proceedings in the matter.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/23/2019

**IN THE COURT OF COMMON PLEAS OF MIFFLIN COUNTY, PENNSYLVANIA**
**ORPHAN'S COURT DIVISION**

In the Interest of: A.H.                :       **PARENTAL ACTION NO. 17 of 2018**

## OPINION

AND NOW, this _12th_ day of February, 2019, Mifflin County Children and Youth Social Services ("the Agency" hereafter) filed a petition to terminate the parental rights of natural mother, J.K. ("Mother" hereafter), with respect to her child, A.H. A termination hearing was held on January 4, 2019 and January 9, 2019. This Opinion is in support of the Court's Order, entered this date, terminating Mother's parental rights.

## FACTUAL AND PROCEDURAL HISTORY

A.H. was born on September  , 2006. The Agency became involved in the underlying matter after receiving a phone call on September 16, 2016 concerning home conditions and a concern that Mother left A.H. alone with her paramour, A.S.; A.S. has a criminal history as a Tier 3 Megan's Law offender. On September 26, 2016, the Agency received another referral that A.H. alleged that A.S. touched A.H. on the outside and inside of her private area; that A.S. asked A.H., "does that feel good"; that A.S. masturbated in front of A.H. and made A.H. touch his penis; and when A.H. reported this to Mother, Mother told A.H. that she was lying and not to tell, as A.S. and Mother would go to jail and A.H. would be sent to live with strangers. Nicole Patkalitsky spoke with Mother about the allegations against A.S. Mother told Ms. Patkalisky that she did not have any concerns about A.H. being around A.S. While Mother knew A.S. was a Megan's Law Offender, Mother believed A.S. was wrongfully convicted and was innocent of the past charges. Mother further claimed that she did not leave A.H. alone with A.S. and did not believe he had any sexual interactions with A.H.

APPENDIX A

1

An Emergency Order for the Agency to take emergency protective custody of A.H. was issued that day. On October 13, 2016, the Agency marked three incidences of abuse founded as to Mother. Mother was charged with Endangering the Welfare of Children, a misdemeanor of the first degree, on October 17, 2016. Mother made bail on October 26, 2016 and was released from the Mifflin County Correctional Facility. A.H. was adjudicated dependent with disposition of legal and physical custody with the Agency on November 3, 2016.

The Agency developed five child permanency plans dated October 25, 2016, March 29, 20017, September 19, 2017, February 13, 2018 and June 26, 2018. The Agency assessed the following parental objectives for Mother: demonstrate appropriate protective capacities; identify and maintain safe and stable housing, maintain stable income to meet the family's needs; ensure mental health needs are being met through counseling and medication management; demonstrate parenting skills that meet A.H.'s physical, developmental and emotional needs; demonstrate healthy life skills and cooperate with the Agency and other service providers.

To help Mother meet these objectives and works towards reunification with A.H., a referral was made to Family Intervention Crisis Services ("FICS" hereafter). FICS was willing to provide Mother with parent education, counseling sessions, and lifestyle checks. Due to the underlying criminal charges, and the no contact provision of Mother's bail, FICS did not offer Mother visitation sessions with the child. Mother refused to work with the Agency and FICS and refused all services. As a result, Mother failed to make any progress towards alleviating the circumstances which led to A.H.'s placement with the Agency.

Mother was unable to identify and maintain safe and stable housing. During proceedings, Mother refused to tell the Agency where and with whom she was living. At termination hearing, Mother testified

2

that while she was released on bail she lived with her parents. For this reason, Mother believed she had met the Agency's objective as this was a permanent home prior to incarceration. However, Mother averred that the residence was not a suitable place for A.H. and agreed that she did not have stable housing for A.H.

Furthermore, the Court cannot find that Mother met the Agency's objective to maintain a stable income that would meet her family's needs, as Mother refused to provide any information to the Agency about her employment. The Agency could not determine whether Mother was working, how many hours she worked, what her pay was and whether she could meet her bills. While Mother avers that she made enough at Trinity to support herself and A.H., this averment is unsubstantiated.

Mother also failed to show that her mental health needs were being met through counseling and medication management. Mother refused to sign a release for her mental health records. At termination hearing, Mother testified that she attended counseling at Universal Community Behavioral Health; however, Mother could not remember the name of the counselor. Mother testified that she received counseling through Universal Community Behavioral Health, but did not receive or need medication management. Again, this averment is unsubstantiated as Mother refused to provide information or releases to the Agency or FICS.

Lastly, Mother testified that she was unable to demonstrate a protective capacity as she has not seen the child since October of 2016. Mother claims that because she was not allowed to have contact with A.H., as part of the terms of her bail, there was no way she could meet the Agency's objectives. Mother also claims that the Agency and FICS workers did not contact her or assist her concerning the means of alleviating the circumstances that led to placement. Even if this were true, Mother has made no effort, through other service means, to show the Agency that she could demonstrate a protective capacity or meet A.H.'s physical, developmental or emotional needs.

3

Mother continues to affirm her innocence and the innocence of A.S. Furthermore, even after the filing of dependency, Mother went to Tennessee with A.S. Mother had the option of working on the permanency plan with the Agency and FICS, but Mother chose to leave the Commonwealth with her boyfriend. Mother has consistently chosen her paramour, A.S., over the well-being of her own child.

When asked by the Agency what Mother did to work with the Agency and their objectives, Mother testified that she went to the Permanency Plans and returned the Agency's phone calls. However, Mother admits that she never reached out to them by phone or at their office with questions or concerns. Furthermore, Mother never sent A.H. gifts or letters or asked the Agency if she could have indirect contact, after her bail condition was lifted. Mother has not had any contact with A.H. in over two years, and has made minimal efforts to maintain that relationship. Mother knew, by information from the Agency, that A.H. was attending counseling at Brookeville. However, Mother never requested information concerning A.H.'s counseling sessions or reached out to A.H.'s counselor.

At the Permanency Review Hearing held March 3, 2017, the Court found Mother was non-compliant with the permanency plan and she made no progress towards alleviated the circumstances which necessitated the original placement of the child. At Permanency Review Hearing on September 1, 2017, the Court found Mother was minimally compliant with the permanency plan, but had not made any progress towards alleviating the circumstances which necessitated placement. At the next Permanency Review Hearing held January 5, 2018, the Court found Mother had made no compliance with the permanency plan and there was no compliance towards alleviating the circumstances which led to A.H.'s placement. Finally, at the last Permanency Review Hearing held June 8, 2018, the Court found Mother was non-compliant with the permanency plan and had made no progress towards alleviating the circumstances which necessitated placement. Testimony by the Agency provided that they still have the same concerns today that they did at the time of filing.

4

After jury trial held March 19, 2018, Mother was found guilty of the charge of Endangering the Welfare of Children under CP-44-CR-653-2016 and was given a sentence of one to two years in a State Correctional Facility on May 11, 2018. Mother is not eligible for parole until October of 2019 and testified that she believes she will likely max out on her sentence. A.S. was found guilty of Aggravated Indecent Assault of a person less than 13 years of age, three counts of Unlawful Contact with a Minor, three counts of Corruption of Minors, and Indecent Assault with a person less than 13 years of age.

When asked what Mother was doing to work towards reunification with A.H. while incarcerated, Mother testified that she completed a Moving on for Woman class and is attending parenting group. However, Mother averred that the Moving on for Woman was a class that was required as part of her incarceration. Mother is voluntarily attending parenting group. However, to date, Mother has not contacted the Agency to determine whether she could indirectly communicate, through gifts or letters, with A.H. Furthermore, Mother continues to assert her innocence and the innocence of A.S.

## DISCUSSION

The court must undergo a two-step analysis when deciding whether to terminate an individual's parental rights. First, the court must determine whether the petitioner proved with clear and convincing evidence one of the grounds for termination stated in 23 Pa.C.S.A. § 2511(a). Next, the court must assess A.H.'s developmental, physical, and emotional needs and welfare in accordance with 23 Pa.C.S.A. § 2511(b) and the best interest of the child standard. The court must consider each case's individual circumstances and the parent's explanations to determine whether the "totality of the circumstances" justifies terminating the parent's rights. *In re B.N.M.*, 856 A.2d 847, 853 (Pa. Super. 2004).

The Agency alleges grounds for termination under 23 Pa.C.S.A. § 2511(a)(1), 23 Pa.C.S.A. 2511(a)(2), 23 Pa.C.S.A. § 2511(a)(5) and 23 Pa.C.S.A. § 2511(a)(8). The Court will first address the

5

termination grounds found in all three alleged sections. Then it will separately determine whether terminating Mother's parental rights serves A.H.'s best interest.

## I. Termination Grounds

### A. Termination Pursuant to 23 Pa.C.S.A. § 2511(a)(1)

§ 2511(a)(1) authorizes the court to terminate a parent's rights if:

> "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties."

23 Pa.C.S.A. § 2511(a)(1).

"The petitioner has the burden of producing evidence that is so clear, direct, weighty and convincing as to enable the Court to come to a clear conviction, without hesitation of the truth, of the precise facts at issue." *In re Child M.*, 452 Pa. Super. 230, 681 A.2d 793 (Pa. Super. 1996). Further, when applying the statutory length of time, the Court should not ". . . mechanically apply the six-month statutory provision." *L.N.B.-G. v. L.S.G.*, 2016 Pa. Super. Unpub. LEXIS 471, *10-11 (Pa. Super. 2016) (*citing In re A.S.*, 2010 PA Super 164, 11 A.3d 473, 482 (Pa. Super. 2010). Rather, "[t]he court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his . . . . parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *Id.* Finally,

> "the court must consider the non-custodial parent's explanation, if any, for the apparent neglect, including situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between the non-custodial parent and his...child. Although a parent is not required to perform the impossible, he must act affirmatively to maintain his relationship with his child, even in difficult circumstances. A parent has the duty to exert himself, to take and maintain a place of importance in the child's life.

6

> Thus, a parent's basic constitutional right to the custody and rearing of his...child is controverted, upon the failure to fulfill his...parental duties, to the child's right to have proper parenting and fulfillment of his...potential in a permanent, healthy, safe environment."

*In re Adoption of H.H.*, 2014 Pa. Super. Unpub. LEXIS 2715, *5-6 (Pa. Super. 2014) (*citing In re B.,N.M.*, 856 A.2d 847, 855-56 (Pa. Super. 2004)).

Upon consideration of the above, the Court finds the Agency has established, by clear and convincing evidence, the grounds for termination of Mother's parental rights under § 2511(a)(1). While there is no doubt that the terms of Mother's bail created a significant challenge to reunification, Mother took no affirmative action to maintain her relationship with A.H. Mother chose not to work with the Agency and FICS, refused services, failed to work towards her parental objectives and did not even seek out indirect contact, after her bail provision was lifted.

The Agency provided Mother with a permanency plan for reunification with A.H. These objectives included identifying and maintain stable housing and income, meeting her mental health needs, demonstrating proper parenting skills, and most importantly, demonstrating a protective capacity. Rather than work towards this plan, Mother left the Commonwealth to go to Tennessee with her paramour, A.S. When she returned from Tennessee, Mother made no effort to contact the Agency or work towards her parental objectives. Mother refused to provide releases to the Agency, refused to allow the Agency in her residence, refused to provide the Agency with information about her employment and refused FICS' services.

When Mother was sentenced and the conditions of her bail no longer in force, Mother did not make any effort to engage in indirect conversation with A.H. and did not send the child gifts or cards. A parental duty is an affirmative duty on the part of the parent to love, protect and support a child and to make a genuine effort to maintain communication and association with the child. *In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003). When a child is in foster care, affirmative duty requires the parent to work

towards the return of the child by cooperating with the Agency to obtain rehabilitative services necessary for them to be capable of performing their parental duties and responsibilities. *In re G.P.-R.*, 851 A.2d 967, 977 (Pa. Super. 2004). Mother took no affirmative action to love or support A.H. or to show that she would be able to adequately protect her in the future.

Mother avers that if the Agency would allow future visits with A.H., she would take the steps necessary to facilitate visits. Mother also avers that she has benefited from the Moving On Class that she has taken while incarcerated at her state correctional institute. Mother avers that she has a calmer demeanor and is now moving forward with parenting group. Mother testified that she would like to write letters to A.H. and have vists with her. Mother also averred that she would participate in counseling with A.H., if termination were denied. However, Mother has had twenty-seven months to participate with service providers and work towards reunification and has refused to comply. The court does not need to wait until a more convenient time for the parent to become involved. *In re E.M.,* 908 A.2d 297, 304 (Pa. Super. 2007)(stating that "parental rights are not preserved" by waiting for a more "convenient" or "suitable" time for the parent while others perform their duties). To delay termination would strip A.H. of her need for essential parental care and permanency. For these reasons, the Court finds Mother has evidenced a settled purpose of relinquishing parental claim to A.H. and has refused to perform parental duties.

### B. Termination Pursuant to 23 Pa.C.S.A. § 2511(a)(2)

Section 2511(a)(2) authorizes the court to terminate a parent's rights if:

> "The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."

23 Pa. C.S.A. § 2511(a)(2).

8

The Agency has established, by clear and convincing evidence, the grounds for termination of Mother's parental rights under § 2511(a)(2). A.H. was placed in the legal and physical custody of the Agency after the Agency received a report that Mother's paramour, A.S., was engaging in sexual activities with A.H. A.H. has consistently alleged ongoing sexual abuse occurred by A.S. while she lived in Mother's home. Mother knew A.S. was a Megan's Law Offender, but believed A.S. was wrongfully convicted and was innocent of the past charges. Mother further claimed that she did not leave A.H. alone with A.S. and did not believe he had any sexual interactions with A.H., despite A.H.'s claims to the contrary. Furthermore, Mother testified, at her jury trial, that she cannot think of anything that she might have done differently to protect her daughter from A.S.

Since the filing for dependency, A.S. was found guilty of the charges of Aggravated Indecent Assault of a person less than 13 years of age, three counts of Unlawful Contact with a Minor, three counts of Corruption of Minors, and Indecent Assault with a person less than 13 years of age. Mother was found guilty of the charge of Endangering the Welfare of children. Even so, Mother continues to allege that A.S. is innocent and that she never left A.H. alone with him. Mother further testified that she affirms the views expressed at her jury trial.

The Agency and FICS created three child permanency plans that outlined the objectives and goals for Mother to achieve for reunification. FICS also provided parent education, counseling and lifestyle checks. Mother failed to utilize these resources and refused to work with both the Agency and FICS. In turn, the Agency still had the same concerns that necessitated placement. Mother could not identify and maintain safe and stable housing. After being released on bail, Mother went to live with her parents. Mother admitted this was not a suitable place for her daughter to live. Furthermore, Mother testified that upon release from incarceration she would return to her parent's home until she could get on her feet.

9

Therefore, even if the Court were to delay termination proceedings, Mother would not be able to provide A.H. with a safe and stable home.

Mother also refused to provide any information to the Agency concerning her income and employment. Furthermore, and most importantly, Mother has not demonstrated a protective capacity. Mother continues to believe that A.S. is innocent and continues to believe that A.H. is lying. Mother did not attend any parental courses offered to her by the Agency and the Agency does not have any proof that Mother underwent counseling.

At the last permanency hearing this Court found that Mother was non-compliant with the permanency plan and had made no progress towards alleviating the circumstances which necessitated placement. Since the filing of dependency, Mother has continued in her incapacity and has refused to remedy her behaviors. Mother's inability and unwillingness to protect her daughter from A.S. has left A.H. without essential parental care and control. Therefore, based upon Mother's failure to cooperate with the Agency, failure to protect her daughter and failure to remedy the conditions which led to placement, the Court is satisfied that the Petitioners have proved by clear and convincing evidence that Mother has refused to perform her parental duties. As a result, there is a continued inability for Mother to parent which has caused and will continue to cause A.H. to be without essential parental care, control or subsistence necessary for her physical and mental well-being that cannot be remedied in a timely manner. 23 Pa.C.S.A. §2511(a)(2).

### C. Termination Pursuant to 23 Pa.C.S.A. § 2511(a)(5)

Section 2511(a)(5) permits the court to terminate parental rights when:

> "The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child

10

within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child."
23 Pa.C.S.A. § 2511(a)(5).

The Agency by clear and convincing evidence also established the termination grounds found in § 2511(a)(5), relative to Mother. A.H. has been in placement since November 3, 2016. At the time of Mother's hearing, A.H. had been in placement for approximately twenty-seven months. The circumstances that necessitated placement included Mother's inability to demonstrate parenting capacity, her inability to maintain stable housing and income and a failure to meet her mental health needs.

FICS was willing to provide Mother with Reunification Services to teach and model parenting skills and to assist Mother in addressing issues with her adult life. Mother chose not to engage in services and sessions and refused to provide any information or releases to the Agency. At all four Permanency Review Hearings, this Court found Mother made minimal to no compliance with the permanency plan and did not alleviate the circumstances with necessitated the original placement. Despite numerous services that were offered to Mother, Mother refused help and failed to work with service providers and the conditions which led to the removal of the A.H. have not been alleviated. The Court does not believe a continuation of these services and more time to perform these services will remedy the conditions of removal.

While Mother is currently unable to provide for A.H.'s developmental, physical and emotional needs, testimony provided that these needs are currently being met in A.H.'s kinship foster home with her maternal great-aunt. A.H. considers her foster family her family and has averred that this is where she wants to live. At Mother's sentencing hearing, A.H. expressed to the Court that she is disgusted with Mother, that she has a better life without her Mother and that her Mother can, "[g]o to jail. Go to hell." A.H. has strongly expressed her desire to be adopted by her foster parents and wishes to get termination proceedings over with. A.H. is doing well educationally and is involved in extracurricular activities.

11

Based on the foregoing evidence, the Court finds Mother has not remedied the conditions that led to the removal of A.H. from her custody. Mother has failed to demonstrate that she can meet A.H.'s needs or demonstrate a protective capacity. The conditions that led to A.H.'s placement have not been remedied and thus the Court finds that terminating Mother's parental rights would best serve the needs and welfare of A.H., who is happy, healthy and well-adjusted in her foster home. Accordingly, the Court finds grounds to terminate Mother's parental rights pursuant to § 2511(a)(5).

**D.     Termination Pursuant to 23 Pa.C.S.A. § 2511(a)(8)**

The court may terminate a parent's parental rights under § 2511(a)(8) if:

> "The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would serve the needs and welfare of the child."

23 Pa.C.S.A. § 2511(a)(8).

The Agency by clear and convincing evidence established the termination grounds found in § 2511(a)(8). As noted above, at the time of the hearing, A.H. had been in placement for twenty-seven months. Throughout the duration of this matter, Mother refused all services and failed to remedy the conditions which led to the removal of A.H. from the home. At Permanency Review Hearings held March 3, 2017, September 1, 2017, January 5, 2018 and June 8, 2018, this Court found that Mother made little to no compliance with the permanency plan and had made no progress towards alleviating the circumstances which necessitated the original placement. Mother has refused to disclose any employment information, income or bills throughout the dependency proceedings. Mother would not allow the Agency to confirm whether she was taking counseling for her mental health and denied the Agency's request to be placed on her call and visitor list while at SCI Muncy. Mother has failed to demonstrate a willingness and capacity

12

to undertake her parental role. At the time of filing for termination, the Agency and FICS maintained the same concerns that they had at intake.

While Mother is currently unable to provide for A.H.'s developmental, physical and emotional needs, testimony provided that A.H. is thriving in her foster home. Testimony provided that A.H.'s needs are currently being met by her foster family and that A.H. is well bonded with them. For these reasons, the Court finds it is in A.H.'s best interest to reside in a home where she feels loved and where her psychological, emotional and physical needs are being met. As the conditions that led to A.H.'s placement have not been remedied and terminating Mother's parental rights is in A.H.'s best interest, the Court finds grounds to terminate Mother's parental rights pursuant to §2511(a)(8).

## II. The Child's Best Interests

Having found the Agency established with clear and convincing evidence the termination grounds stated in § 2511(a)(1), § 2511(a)(2), § 2511(a)(5) and § 2511(a)8), the Court must determine whether terminating Mother's parental rights serves A.H.'s best interest. The court must give "primary determination" to the child's "developmental, physical, and emotional needs." 23 Pa.C.S.A. § 2511(b). This analysis involves an examination of "intangibles such as love, comfort, security, and stability." *In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006). The court must assess the bond the children have with their parents and whether termination would sever "existing, necessary, and beneficial relationship[s]." *In re K.Z.S.*, 946 A.2d 753, 760 (Pa. Super. 2008)(citing *In re. C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000). The court must pay "close attention" to the effect severing the bond with a parent has on the children. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). However, the child's needs and welfare are the most important factors. *In re K.Z.S.*, 946 A.2d at 760.

Mother has not had any contact with A.H. since October of 2016. Mother testified that prior to the Agency's involvement she had a wonderful relationship and bond with A.H.; Mother avers that she has

13

maintained this bond. However, the Court must also take into consideration A.H.'s statements made to this Court at Mother's sentencing hearing, where A.H. expressed her disgust with Mother, averred she has a better life without her Mother and that her Mother can, "[g]o to jail. Go to hell." Testimony further provided that A.H. has stated emphatically that she wants Mother's rights to be terminated so that she can be adopted by her foster family. For these reasons, the Court does not believe terminating Mother's parental rights would sever a beneficial relationship with A.H.

Furthermore, A.H. is currently thriving in her current environment. A.H. considers her foster family her family and has averred that she wishes to remain with them. Testimony provided that A.H.'s life has substantially improved since placement. A.H. looks to her foster parents to meet all of her physical and emotional needs and goes to her foster parents for comfort. A.H. has strongly expressed her desire to be adopted by her foster parents and wishes to get termination proceedings over with. The Court finds it is in A.H.'s best interest to be placed in a home that can provide for her specific needs. For these reasons, the Court finds terminating Mother's parental rights serves A.H.'s developmental, physical, and emotional needs and welfare.

## CONCLUSION

The Court finds the Agency met its burden by proving through clear and convincing evidence the grounds for involuntary termination of Mother's parental rights found in 23 Pa.C.S.A. § 2511(a)(1), § 2511(a)(2), § 2511(a)(5), and § 2511(a)(8). Also, the Court finds termination is in A.H.'s best interest.

BY THE COURT:

AARON L. GINGRICH
JUDGE

DISTRIBUTION: SEE NEXT PAGE

14